ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

KAITLIN PAULSON (CABN 316804)
Assistant United States Attorney

    450 Golden Gate Ave
    San Francisco, California 94102
    Telephone: (415) 436-6824
    Fax: (510) 637-3724
    Kaitlin.Paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIE THOMAS III,<br><br>    Defendant. | CASE NO. 3:22-cr-00172 JSC<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: June 7, 2023<br>Time:         10:00 a.m.<br>Judge:        Hon. Jacqueline Scott Corley |

## I. INTRODUCTION

The United States respectfully submits its sentencing memorandum concerning defendant Willie Thomas III. On March 8, 2023, pursuant to a written plea agreement, Thomas pleaded guilty to five of eight counts in the Indictment, all charging him with unarmed bank robbery in violation of 18 U.S.C. § 2113(a).

Considering the factors set forth in 18 U.S.C. § 3553(a) and consistent with what the United States agreed to in the plea agreement, the government respectfully requests the Court sentence Thomas to a low-end Guidelines sentence of 63 months' imprisonment, with a three-year term of supervised release (including a warrantless, suspicionless search condition), forfeiture, restitution of $25,274, and a special assessment of $100 per count ($500 total).

## II. BACKGROUND

### A. Offense Conduct

In about a three-week span, between January 25, 2022, and February 17, 2022, Thomas went on a bank robbery spree across San Francisco that resulted in a loss amount north of $25,000. The *modus opperandi* for all robberies was the same. On all eight occasions, Thomas threatened bank employees with violence and death threats. For each, Thomas wore face masks, balaclavas, and/or hats. He used a demand note, which he always retained, and would demand that the victim teller give him cash and threatened violence, including death threats. Thomas also wore some of the same distinctive clothing items and limited-edition sneakers to multiple robberies. In addition, in one robbery, Thomas was driven to the victim bank in a Dodge SUV. Based on subsequent investigation, Thomas was identified as an associate of the SUV driver and law enforcement was able to determine that Thomas matched the robbery suspect's physical attributes. The driver confirmed that he drove Thomas to and from the location of the robbery. Based upon Thomas' similarities in the robbery suspect's description and surveillance photographs and videos, his known presence at one robbery, and the same modus operandi at all eight robberies, law enforcement concluded that Thomas was the suspect likely responsible for the seven bank robberies that had occurred to-date. Finally, on the day of the eighth and final robbery in the spree, Thomas was arrested shortly after the robbery occurred, still wearing the distinctive black pants with multicolor designs on the legs worn by the bank robber seen on surveillance footage.

**Jan. 25, 2022 | Wells Fargo Bank in San Francisco (Count One)**

Thomas robbed the Wells Fargo Bank located at 3801 3rd Street, Suite 116, in San Francisco, on January 25, 2022. He approached the bank teller and displayed a handwritten note to the teller, which contained a message that demanded money and threatened to kill the teller. In total, Thomas obtained $4,361.00 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a green balaclava, black sunglasses which were removed, a white surgical-type mask, an orange pullover hooded sweatshirt, with "CAUTION" graphic on the front and black & white stripes on the sleeves, black pants, and black and red Nike Jordan flu game 12 basketball shoes.

**Jan. 27, 2022 | Chase Bank in San Francisco (Count Two)**

Thomas robbed the Chase Bank located at 2900 Mission Street, in San Francisco on January 27, 2022, by displaying a handwritten note to the teller, which stated that it was a robbery and threatened to hurt or kill the teller. In total, Thomas obtained $9,900 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a black beanie, a white round N95 mask, a black pullover hoodie, jeans, and brown Vans Sk9-Hi MTE-2 style shoes with black laces and white outsoles.

**Jan. 27, 2022 | Wells Fargo in San Francisco (Count Three)**

For a second time in one day, Thomas robbed a San Francisco bank. Specifically, Thomas robbed the Wells Fargo Bank located at 655 8th Street, in San Francisco on January 27, 2022, by approaching a bank teller and displaying a demand note with threats of violence. In total, Thomas obtained $500 before leaving the bank.

Thomas was captured on surveillance video inside the bank. The surveillance video showed—similar to the robber from the incident earlier that day—a black male wearing a black beanie, a white round N95 mask, a black pullover hoodie with the word "Cookies" and a "C" logo in blue, jeans, and brown Vans Sk9-Hi MTE-2 style shoes with black laces and white outsoles.

**Feb. 1, 2022 | Bank of the West in San Francisco (Count Four)**

Thomas robbed the Bank of the West located at 2675 San Bruno Avenue, in San Francisco on February 1, 2022, by approaching the teller and displaying a threatening demand note. In total, Thomas obtained $6,129.00 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a black surgical mask, a black hoodie with the word "Cookies" and a "C" logo in blue, a jean jacket with eyeball graphics on the back, black pants, and black and red Nike Jordan flu game 12 style basketball shoes. Following Thomas' arrest, a search was conducted of a car used by Thomas and where a matching jean jacket with decorative eyeballs on the back was located. The black hoodie with the work "Cookies" on it appeared to match the sweatshirt worn by the January 27 robber.

**Feb. 5, 2022 | Chase Bank in San Francisco (Count Five)**

Thomas attempted to rob the Chase Bank located at 1811 19th Street, in San Francisco on

February 5, 2022, by approaching the bank teller and displaying a threatening handwritten demand note. The bank did not incur a loss following the attempted robbery.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a black beanie with an emblem on the front, a white surgical mask, a yellow and orange San Francisco Department of Public Works vest with an emblem on the lower left portion of the vest and markings on the right pocket, a blue sweatshirt with orange lettering or emblem underneath the vest, jeans, and white shoes.

### Feb. 5, 2022 | Wells Fargo Bank in San Francisco (Count Six)

For a second time in a day, Thomas entered a bank intent on robbing it. This time, he was successful. Specifically, Thomas was driven in a Dodge SUV to the Wells Fargo Bank located at 2300 16th Street, in San Francisco on February 5, 2022. This Wells Fargo is located inside a Safeway. Thomas entered the Safeway and approached a bank teller at the Wells Fargo inside the grocery store, handing over the demand note that threatened violence. In total, Thomas obtained $500 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a black beanie with an emblem on the front, a white surgical mask, a blue sweatshirt with the word emblem "GLOCK" in orange, jeans, and white shoes. The outfit appears similar to the one worn by the robbery suspect earlier on February 5. As a result, a scar and a tattoo on the suspect's right hand were captured by the bank's surveillance cameras. In addition, surveillance footage of the parking lot shows a man similar in stature and characteristics to Thomas exiting and entering the Dodge before and after the robbery. The Dodge driver confirmed that Thomas was the passenger in the Dodge for that trip to the Safeway.

### Feb. 9, 2022 | U.S. Bank in San Francisco (Count Seven)

Thomas robbed the U.S. Bank located at 4610 Mission Street, in San Francisco on February 9, 2022, by approaching a bank teller and displaying a note that demanded money and threatened to hurt or kill the teller. In total, Thomas obtained $1,064 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a dark ball cap, black wig with brown highlights, a surgical mask, gray zip-up hoodie, black

pants, red and white shoes, and carried a brown purse. Following Thomas' arrest, a search was conducted of a car used by Thomas and where a matching wig, sweatshirt, and purse were located.

### Feb. 17, 2022 | U.S. Bank in San Francisco (Count Eight)

Thomas robbed the U.S. Bank located at 4947 3rd Street, in San Francisco on February 17, 2022, by approaching the teller and displaying a threatening demand note. In total, Thomas obtained $2,820 before leaving the bank.

Thomas was captured on surveillance video inside the bank. He appears to be a black male wearing a face mask, a green baseball cap, a denim jacket with designs, black pants with multicolor designs on both legs, and blue and white shoes. Later on February 17, 2022, Thomas was apprehended and arrested by SFPD, while wearing the same black pants with designs on them, albeit under a second pair of pants.

**B.     Applicable Guidelines Calculation**

On March 8, 2023, Thomas pleaded guilty to five counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). Under the Sentencing Guideline § 2B3.1(a), the base offense level for bank robbery is 20. Under Sentencing Guideline § 2B3.1(b)(1), Thomas' offense level is increased by two because the robbery was of a financial institution. Under Sentencing Guideline § 2B3.1(b)(2)(f), Thomas' offense level is increased by two because a death threat was made. For the grouping of closely related counts under § 3D1.4(a), the parties concluded that the four other bank robbery counts results in a four-unit increase, which in turn results in a four-point increase.

Pursuant to Sentencing Guideline § 3E.1.1, Thomas is eligible for a three-point reduction. The adjusted offense level is 25. [Thomas Plea, Dkt. No. 67 at ¶ 7.] Probation determined that Thomas has a Criminal History Category of II. [PSR at ¶ 75.] The Guidelines range is 63–78 months' imprisonment. Because the Guidelines range falls in Zone D of the Sentencing Table, a minimum term must be satisfied by a term of imprisonment. As detailed below, the United States recommends a sentence of 63 months' imprisonment.

//

//

//

## III.   DISCUSSION

### A.   Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5)   the need to provide restitution to any victims of the offense.

### B.   The Government's Recommendation Is Sufficient But Not Greater Than Necessary

Thomas executed a series of eight robberies in about a three-week period, issuing threats of violence and death threats to all the victim bank tellers from whom he robbed. Bank robberies are inherently dangerous and traumatizing for the victims. Despite having never been convicted of a felony before, being raised in a stable environment with employed parents, and belonging to a local iron workers union, Thomas undertook the string of eight robberies, by all appearances to fuel a substance addiction. A low-end Guidelines sentence is appropriate here for the reasons detailed below.

As mentioned above, Thomas' conduct was inherently dangerous. He robbed multiple banks—sometimes two in a day—and threatened to kill the bank tellers he encountered, standing just feet away

from them.  Many of the tellers reported being traumatized from the experience and were visibly crying when speaking with law enforcement of their experience.  Of the over $25,000 Thomas obtained through his criminal conduct, he appears to have spent most of it, presumably to support his drug addiction.

### C.    Promote Respect for the Law, Protect the Public, Punishment and Deterrence

The government's recommended sentence of 63 months' imprisonment is designed to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  In terms of specific deterrence, Thomas should be specifically deterred by a low-end Guidelines sentence.  For general deterrence, a 63-month sentence should deter others considering robbing banks from actions like those of Thomas.

While the government recognizes Thomas faces substance abuse issues, it is concerning that Thomas has repeatedly violated his terms of supervised release, again and again putting in harm's way the community around him.  This makes also highlights the need for a sentence that will both deter the criminal conduct and protect the public.

Specifically, during the course of his pretrial release, Thomas received multiple supervision violations.  These include a violation for ripping electrical wiring out of the wall at Newbridge so he could light cigarettes; this could have caused a fire that could have harmed or killed others in the program, those working at Newbridge, or those community members living in the surrounding neighborhood.  This is extremely dangerous.  Thomas also received a violation for sexually harassing another patient at Newbridge, and was accused of grabbing a female patient's crotch and saying he could "hit that."  He also threatened a staff member.  There are multiple other violations that occurred during Thomas' time at Newbridge.  [PSR at ¶ 5.]  Subsequently, when Thomas was another substance abuse program—the Billie Holiday Center—and on lockdown, Thomas escaped, and, according to a San Francisco police report, robbed and threatened a 74-year-old woman of her wallet.  According to the victim, once she realized that her wallet had been stolen by Thomas' compatriot, Thomas put his fist up to her and told her not to say anything.  The case is being handled by the San Francisco District Attorney.

What is reflected in each of these incidents is Thomas's complete disregard for the safety of

UNITED STATES' SENTENCING MEMORANDUM   7
22-cr-00153 CRB

those around him and a failure to be deterred from criminal conduct, even while on federal pretrial release.  Despite being on pretrial release for an eight-count federal indictment of bank robbery, Thomas continued to rob with threats of violence, and otherwise threaten and infringe upon the safety of those around him.  While he was supposed to be on his best behavior—to show the Court and the community that he recognized his problematic conduct and to take advantage of all the resources the Court provided to him to address his addiction issues—Thomas demonstrated some of his worst.  A sentence of 63 months' imprisonment is required here to both deter Thomas from future criminal conduct and also to protect the public.  A sentence no lower than the low-end of the applicable Guidelines will accomplish this.

In light of Thomas's underlying conduct and self-professed addiction issues, as well as his conduct on pretrial release, the government proposes a three-year period of supervised release (including a warrantless, suspicionless search condition) following Thomas' period of incarceration, which will provide resources and treatment options from which Thomas—if he takes advantage of them—will greatly benefit.

**IV.   CONCLUSION**

For the foregoing reasons and after giving full consideration of all the sentencing factors set forth in 18 U.S.C. 3553(a), the United States respectfully requests that the Court impose a sentence of 63 months' incarceration, three years of supervised release (including a warrantless, suspicionless search condition), a $100 special assessment per count (total of $500), forfeiture, and restitution.

DATED: May 31, 2023                                         Respectfully submitted,

                                                            ISMAIL J. RAMSEY
                                                            United States Attorney

                                                                  /s/
                                                            KAITLIN PAULSON
                                                            Assistant United States Attorney